UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

A.F., an infant over the age of 14 years, by his natural guardian and mother, ELIZABETH FELDMAN; and ELIZABETH FELDMAN,

        Plaintiffs,

    v.

UNITED STATES OF AMERICA,

        Defendant.

14 Civ. 374 (LAK)

## PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Proposed Findings of Fact.

1.    The Open Door Family Medical Centers ("Open Door") is a health service organization that receives funds from the U.S. Department of Health and Human Services, and during the relevant periods at issue in this matter, Open Door was covered by the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233.

2.    Open Door operates medical centers, including a health center in Ossining, New York. During 2011, Dr. Onyinye Okpukpara, a licensed physician, board certified in family medicine, was employed at Open Door in Ossining.

3.    Elizabeth Feldman is the mother and natural guardian of A.F. They live in Ossining, located in the Southern District of New York.

4.    From May through August of 2011, A.F. sought treatment from Open Door in Ossining for warts on his left foot. Following the failure of more conservative

treatment, A.F. was treated with four sessions of cryotherapy.  The first such treatment occurred on June 17, 2011, when Dr. Colleen Eng performed cryotherapy on warts on his left big toe and on the medial side of his second left toe.   She did four freeze/ thaw cycles and instructed him to come back at two week intervals for further treatment.   He returned on June 29, 2011 for a second treatment.  Dr. Eng noted some improvement in the warts. His third treatment was almost a month later on July 27, 2011, outside of the recommended optimal two week interval, because he had been away at camp.  Following those treatments, A.F. suffered minimal adverse effects.

5.     Dr. Okpukpara treated A.F. in the fourth cryotherapy session, which took place on August 10, 2011.  Dr. Okpukpara applied the liquid nitrogen for substantially longer than had Dr. Eng, and her wait time between cycles was substantially less.  Unlike Dr. Eng, Dr. Okpukpara did not document the number of cycles she used in the chart.  Following that session, A.F. immediately suffered and complained of severe pain.  Within twenty-four hours, he developed blisters of a size and type (serosanguinous, or blood-filled) much worse than he had following the three previous cryotherapy sessions.

6.     The following day, August 11, 2011, A.F. returned to Open Door, and saw Dr. David Lar, a board-certified pediatrician.  Dr. Lar documented the appearance of A.F.'s left foot, including the blisters, and told him to return the following day to see the physician who had performed the cryotherapy, Dr. Okpukpara.

7.     A.F. returned to Open Door the following day, August 12, 2011, and saw Dr. Okpukpara.  She documented the blisters, and told A.F. (and noted in the chart) that they were a normal consequence of the procedure.

8.  On August 20, 2011, Elizabeth Feldman became concerned about the appearance of the toes on A.F.'s left foot and called Open Door. She was instructed to take him to Phelps Hospital Emergency Room, which she did.  At Phelps, ulcerated areas were noted on the medial surface of the 2nd left toe and between the first and second toe.  There was no drainage.  There was slight erythema.  The ulcers were cultured, which subsequently grew coagulase negative staph, non-pathogenic bacteria commonly found on the skin.  The final assessment was "likely frost bite" due to liquid nitrogen, and that A.F. needed to be evaluated at the burn unit of Westchester Medical Center.

9.  On August 22, 2011, A.F. went to the emergency room at Westchester Medical Center ("WMC").  He was seen there by Dr. Joseph Turkowski, the chief of WMC's burn unit.  Dr. Turkowski diagnosed a deep dermal to full-thickness injury due to liquid nitrogen treatment for warts.  He told A.F. to return to the burn unit in three days, and prescribed clindamycin (an oral antibiotic) and Silvadene (a cream).

10.  On August 25, 2011, A.F. saw Dr. Turkowski at the burn unit.  Dr. Turkowski told him to continue the medications and to return to WMC in one week.

11.  On September 1, 2011, A.F. was admitted to WMC.  The following day, Dr. Turkowski performed a full-thickness skin graft on the second toe of A.F.'s left foot.  A.F. was discharged from WMC on September 7, 2011.  In the discharge summary, Dr. Turkowski wrote that A.F. had sustained "a chemical burn to his left foot, first web space and medial second and great toes when he was being treated for wart removal with liquid nitrogen".

12. For approximately three months following the surgery, A.F. could not engage in his usual activities, which included playing football. He has some pain with cold and pressure to date. He has scars on his left foot and in the donor area, his left groin.

### .Proposed Conclusions of Law

1. This action arises under the FTCA, which waives the United States' sovereign immunity from suits for personal injury damages caused by the "negligent or wrongful act or omission" of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b); *Guccione v. United States of America*, 847 F.2d 1031, 1033 (2d Cir. 1988); *Hurwitz v. United States of America*, 884 F.2d 684, 686 (2d Cir. 1989), cert. denied, 493 U.S. 1056 (1990). The events in question occurred at Open Door in Ossining, New York. Therefore, the substantive law of the State of New York is applicable with respect to both liability and damages.

2. The administrative claim is an essential jurisdictional requirement preliminary to the commencement of litigation. 28 U.S.C. § 2672(a). Plaintiffs filed an SF-95 with the appropriate agency within two years of the alleged injury.

3. To establish a claim of medical malpractice under New York law, a plaintiff must prove (1) that the defendant breached the standard of care in the community, and (2) that the breach proximately caused the plaintiff's injury. *Arkin v. Gittleson*, 32 F.3d 658, 664 (2d Cir. 1994). New York law further provides that expert medical opinion is

required to make out both of these elements. See *Milano by Milano v. Freed*, 64 F.3d 91, 95 (2d Cir. 1995).

    4.    The standard of care for physicians in New York was established in 1898, in *Pike v. Honsinger*, 155 N.Y. 201, 49 N.E. 760 (1898). That standard requires that a physician exercise a "reasonable degree of learning and skill that is ordinarily possessed by physicians and surgeons in the locality where he practices." Id., 155 N.Y. at 209, 49 N.E. at 760.

    5.    The issues to be addressed at the trial hereof are: (a) whether Dr. Okpukpara departed from the standard of care in regard to the performance of the fourth cryotherapy procedure by either applying the liquid nitrogen for too long or by waiting an insufficient time between application cycles, and, if such departure is established, (b) whether such negligence was a substantial cause of A.F.'s injuries, and, if so, (c) fair and reasonable compensation to A.F.

    6.    Plaintiffs propose that 5(a) and (b) should be answered "Yes".

Dated:    October 9, 2015
             Bronx, New York

Respectfully submitted,

IROM, WITTELS, FREUND, BERNE &
SERRA, P.C.

By: s/ Wesley M. Serra (WS-0466)

Attorneys for Plaintiffs
349 East 149th Street
Bronx, New York 10451
(718) 665-0220
wserra@iromlaw.com